## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JENNIFER M. A.,[1]           )
                       )
       **Plaintiff,**      )
                       )     **CIVIL ACTION**
**v.**                        )
                       )     **No. 20-2159-JWL**
**ANDREW M. SAUL,**     )
**Commissioner of Social Security,**  )
                       )
       **Defendant.**     )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no reversible error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.     Background

_____

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for DIB and SSI benefits on February 18, 2017.  (R. 10).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in assessing a residual functional capacity (RFC) to perform light work; in her step three consideration by finding that Plaintiff's condition does not meet or medically equal Listing 11.14, peripheral neuropathy, or Listing 14.09, inflammatory arthritis; in failing to further develop the record although it supported neither a finding of disability nor a finding of nondisability; and in failing to "address or reconcile conflicts between the VE's [(vocational expert)] testimony and the Dictionary of Occupational Titles (DOT), with the medical record."  (Pl. Br. 22).  She argues the case should be reversed and remanded for an immediate award of benefits.  Id. at 24.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see

also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether the

claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in the order they would be reached in applying the sequential evaluation process.

## II.    Step Three Evaluation

Plaintiff notes the ALJ considered Listings 11.14 (peripheral neuropathy) and 14.09 (inflammatory arthritis) "as conditions that can cause widespread pain symptoms" but found Plaintiff's condition did not meet these listing.  (Pl. Br. 15) (quoting R. 13).

4

Plaintiff argues that her condition meets or equals the criteria of Listing 11.14B because her "ability to abulate [sic] is at least markedly limited" (Pl. Br. 16), and she points to evidence suggesting she has greater limitations than assessed by the ALJ in the mental areas of understanding, remembering, or applying information; of interacting with others; and of concentrating, persisting, or maintaining pace. Id. at 17-19.

Plaintiff argues as to Listing 14.09 "the ALJ did not provide more than a cursory analysis of Plaintiff's symptoms, particularly as it [sic] relates to Listing 14.09(B) and (D). The ALJ states only the legal conclusion that '[Plaintiff] has not shown two of the constitutional signs or symptoms.'" Id. at 19 (quoting without citation (R. 14). She argues, "The issue is that the ALJ makes findings that Plaintiff has significant limitations, but the ALJ errs when she fails to demonstrate how or if these limitations relate to Plaintiff's medically determinable impairments." Id. She points to record evidence suggesting fatigue, insomnia, pain, somatic symptoms, lack of feeling, unsteadiness, and headaches, and argues this evidence compels finding Plaintiff meets Listing 14.09. Id. at 20. In a final argument in this regard, Plaintiff points out that the Commissioner subsequently issued Social Security Ruling (SSR) 19-4p relating to headaches in August 2019 and the court should remand "for further findings relating to how Plaintiff's headaches affect her." Id. at 21.

The Commissioner quotes from SSR 17-2p and argues the ALJ need articulate nothing more than she did in this case—that Plaintiff's condition does not medically equal Listing 11.14 or Listing 14.09 based on fibromyalgia. (Comm'r Br. 13) (quoting SSR 17-2p, 2017 WL 3928306, at *4) ("Generally, a statement that the individual's

impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding.").  He argues that even if the ALJ failed to provide sufficient explanation of her finding, Plaintiff merely makes a "broad, nonspecific argument that some of the evidence of record supports her preferred interpretation" (Comm'r Br. 13) (footnote omitted), but does not show that the evidence compels that interpretation.  Id. at 14 (citing Elias-Zacarias, 502 U.S. at 481 n.1 (to override the agency's factual finding, a reviewing court "must find that the evidence not only supports [a contrary] conclusion, but compels it") (emphases omitted); and Lax, 489 F.3d at 1084 (the court "may not displace the agency's choice between two fairly conflicting views")).

In her Reply Brief, Plaintiff argues the ALJ largely dismissed the issue of headaches and did not consider it in her RFC analysis.  (Reply 3).  Plaintiff summarizes the record evidence of her headaches and argues the ALJ should have found them disabling.  Id. at 5-6.  She acknowledges the ALJ evaluated Listing 11.02 for epilepsy but argues she should have considered whether Plaintiff's headaches were medically equivalent to Listing 11.02B or 11.02D for dyscognitive seizures which, in her view, they are.  Id. at 6-8.  Plaintiff argues the Appeals Council, which denied Plaintiff's request for review of the ALJ's decision on January 21, 2020, was required to apply SSR 19-4p in deciding whether to review the ALJ's decision.  Id. at 8-9.  She argues that the case must be remanded because SSR 19-4p constitutes a policy change which was made during the pendency of Plaintiff's appeal, requiring "the agency to determine whether the new policy affects its prior decision."  Id. at 9 (citing Frantz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007) (quoting Sloan v. Astrue, 499 F.3d 883 (8th Cir. 2007))).

### A.      Step Three Standard

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling. 20 C.F.R. §§ 404.1525(a), 416.925(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If plaintiff's condition meets or medically equals the severity of a listed impairment, that impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled"). However, the claimant "has the burden at step three of demonstrating, through medical evidence, that her impairments 'meet all of the specified medical criteria' contained in a particular listing." Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley). "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing. Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153. "Because the

7

Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

Medical equivalence to a listing may be established by showing that the claimant's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). The determination of medical equivalence is made without consideration of vocational factors of age, education, or work experience. 20 C.F.R. §§ 404.1526(c), 416.926(c).

The Listing of Impairments provides criteria for the impairments Plaintiff alleges her condition meets or equals in this case.

> 11.02  Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:
>
> ***
>
> B.  Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
>
> ***
>
> D.  Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>
>> 1. Physical functioning (see 11.00G3a); or
>>
>> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>>
>> 3. Interacting with others (see 11.00G3b(ii)); or
>>
>> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>>
>> 5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.02

> 11.14 Peripheral neuropathy, characterized by A or B:
>
> \*\*\*
>
> B.  Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
>
> > 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> >
> > 2. Interacting with others (see 11.00G3b(ii)); or
> >
> > 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> >
> > 4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.14

> 14.09 Inflammatory arthritis. As described in 14.00D6. With:
>
> \*\*\*
>
> B. Inflammation or deformity in one or more major peripheral joints with:
>
> > 1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and
> >
> > 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
>
> \*\*\*
>
> or
>
> D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> > 1. Limitation of activities of daily living.
> >
> > 2. Limitation in maintaining social functioning.

>3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.09.

## B.    The ALJ's Findings

At step two of the sequential evaluation process, the ALJ found Plaintiff has severe impairments of fibromyalgia, history of seizure disorder, obesity, and headaches. (R. 13) (finding no. 3).  The ALJ explained she:

>considered all of the listed impairments, but particularly considered the medical listing for epilepsy (11.02), peripheral neuropathy (11.14), and inflammatory arthritis (14.09) for their particular relevance to the claimant's impairments.  At the outset, it is important to note that no treating or examining physician has opined that the claimant meets or equals a listing.

(R. 13).  She determined Listing 11.02 was not met or medically equaled because Plaintiff "has not shown the required frequency of seizures."  Id.  She noted that there is no listing for fibromyalgia, but that she had considered Listings 11.14 and 14.09 as similar "conditions that can cause widespread pain symptoms."  Id.  She explained her consideration:

>The undersigned considered listing 11.14 for the evaluation of peripheral neuropathy.  The claimant's peripheral neuropathy does not meet this listing.  The evidence does not demonstrate a disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking or use the upper extremities.  Additionally, the evidence does not demonstrate a marked limitation in physical functioning <u>coupled with a marked limitation in a broad area of mental functioning.</u>
>
>The claimant could meet the listings for inflammatory (14.09) arthritis in four different ways.  First the claimant could show persistent inflammation or persistent deformity of one or more major peripheral weight bearing joints resulting in an inability to ambulate or one or more major peripheral

joints in each upper extremity resulting in an inability to perform fine and gross movements effectively. The claimant could show inflammation or deformity in one or more major peripheral joints with involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity and at least two of the constitutional signs (severe fatigue, fever, malaise, or involuntary weight loss). The claimant could show ankylosing spondylitis or other spondyloarthropathies with ankylosis of the dorsolumbar or cervical spine. Finally, the claimant could also show repeated manifestations of inflammatory arthritis with at least two of the constitutional signs and a marked limitation in either activities of daily living, maintaining social functioning, or completing tasks in a timely manner. As the record below shows, the claimant does not have an inability to ambulate or a complete inability to perform fine and gross movements. The claimant has not shown two of the constitutional signs or symptoms. The claimant has not shown akylosing spondylitis or an equivalent spondyloarthropathy with ankylosis of the dorsolumbar or cervical spine. As found in the analysis of the "paragraph B" criteria, the claimant has not shown a marked limitation in social functioning, completing tasks, or adapting or managing himself [sic] through the day and its activities.

The claimant does not meet or medically equal the listings for peripheral neuropathy or inflammatory arthritis based on her fibromyalgia symptoms.

(R. 14) (emphases added to highlight the ALJ's findings relating to the Listings Plaintiff

alleges her condition meets or equals).

The ALJ considered Plaintiff's limitations in the four broad areas of mental

functioning and found a moderate limitation in the broad mental area of understanding,

remembering, or applying information:

The claimant alleged that she has difficulty remembering generally, understanding what is said to her, and completing tasks. However, the claimant also stated that she could perform simple maintenance, prepare meals, and shop. In addition, the record shows that the claimant was able to provide information about her health, describe her prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, respond to questions from medical providers. Functional testing did indicate some memory deficits, but in examinations, she displayed adequate memory that her deficits were not

11

noticed without more exhaustive testing. (7E; 3F/8; 10F/6; 12F/1, 6, 8, 12, 14; 17F/1; 20F/55).

(R. 14-15).  The ALJ found Plaintiff has no limitations in the broad area of interacting with others, and only mild limitations in the other broad mental areas—concentrating, persisting, or maintaining pace; and adapting or managing herself.  Id. at 15.

## C.    Analysis

Assuming for the sake of argument that Plaintiff has a marked limitation in the ability to ambulate as Plaintiff asserts, her condition still does not meet or equal the criteria of Listing 11.14B, peripheral neuropathy because the ALJ found only a moderate limitation in understanding, remembering, or applying information; no limitations in interacting with others; and only mild limitations in concentrating, persisting, or maintaining pace; or in adapting or managing herself, and Plaintiff has not shown that the evidence compels finding a marked limitation in any one of the four broad mental functional areas.  Although Plaintiff's primary argument seems to be that fibromyalgia causes the severity of her condition to medically equal the severity of Listing 11.14B, to be accepted that argument requires her to show that her condition caused by fibromyalgia is at least equal in severity and duration to the criteria of Listing 11.14B.  20 C.F.R. §§ 404.1526(a), 416.926(a).  She has not shown that fibromyalgia has caused her mental limitations to be equal in severity to the criteria of the listing.

The evidence Plaintiff appeals to in this argument was all considered by the ALJ and does not compel finding a marked limitation in any of the four broad mental functional areas.  Plaintiff's arguments in this line are nothing more than an assertion that

the ALJ was "wrong," apparently in the hope that the court will reweigh the same evidence and find her more seriously limited.  To be sure, Plaintiff is limited in mental functioning, but the ALJ recognized this fact and Plaintiff does not show evidence demonstrating greater limitations.  For example, in her RFC assessment the ALJ discussed Plaintiff's psychological treatment and the findings in Plaintiff's other treatment notes regarding her mental abilities.  (R. 18).  She noted the record indicates Plaintiff sought psychological treatment only in February and August 2018.  Id.  She found, "The February 2018 appointment was a neruopsychological consultation, during which [Plaintiff] gave very poor effort, compromising the results of psychological testing (13F/4 [(R. 562)])."  Id.  She cited treatment records that showed Plaintiff "reported that she felt happy most of the time," "had adequate memory," "was cooperative with examiners," "had normal concentration," and "had appropriate mood and affect."  Id. (citing Exs. 3F/8, 10F/2, 6; 11F/7, 12F/1, 6, 8, 12, 14; 14F/3, 15F/24, 16F/1, 17F/1, 20F/7, 17, 26, 55; 21F/21, 31, 40 (R. 465, 560, 564, 572, 573, 578, 580, 584, 586, 611, 637, 652, 655, 814, 824, 833, 862, 896, 906, 915)).  The ALJ's findings are supported by substantial evidence (such relevant evidence as a reasonable mind might accept as adequate to support a conclusion).  Even if the court believed the evidence cited by Plaintiff is the "better view," it may not substitute its judgment for that of the Commissioner, because Plaintiff's view is not compelled by the evidence.  Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172; see also, Elias-Zacarias, 502 U.S. 478, 481, n.1.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial

evidence.  [The court] may not displace the agency's choice between two fairly

conflicting views, even though the court would justifiably have made a different choice

had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and

bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966)

("the possibility of drawing two inconsistent conclusions from the evidence does not

prevent an administrative agency's finding from being supported by substantial

evidence").

Consideration of Listing 14.09 (B or D) is to the same effect.  Because either

Listing requires at least two of the constitutional symptoms or signs (severe fatigue,

fever, malaise, or involuntary weight loss) and the ALJ found Plaintiff has not shown two

of the constitutional signs or symptoms, Plaintiff's condition can meet or medically equal

those Listings only if she can show the ALJ's finding is error.  She attempts to show error

by arguing that the ALJ stated her finding as a legal conclusion without demonstrating

that the finding is correct.  (Pl. Br. 19).  However, Plaintiff bears the burden to prove at

step three that her condition meets or medically equals the severity of the Listings.

Plaintiff's argument turns the burden of proof in a Social Security case on its head.

Moreover, the ALJ found Plaintiff "has not shown two of the constitutional signs or

symptoms."  (R. 14).  It is impossible to "demonstrate" the nonexistence of evidence,

signs, or symptoms within a record, it's either there or it's not.  It is for Plaintiff to

demonstrate the ALJ's finding is erroneous, that the evidence in fact shows she

experiences two (or more) of the constitutional symptoms or signs.

As noted above, Plaintiff points to record evidence suggesting fatigue, insomnia, pain, somatic symptoms, lack of feeling, unsteadiness, and headaches, and argues this evidence compels finding Plaintiff meets Listing 14.09.  (Pl. Br. 20).  The regulations list the "constitutional symptoms or signs" as "severe fatigue, fever, malaise, or involuntary weight loss."  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 14.09(B & D).  Plaintiff's argument suggests she is suffering from the symptoms or signs of severe fatigue and malaise. Malaise is defined as "1. A vague feeling of bodily discomfort, as at the beginning of an illness.  2. A general sense of depression or unease."  Am. Heritage Med. Dict. (Houghton Mifflin Co. 2007), available online at: Malaise | definition of malaise by Medical dictionary (thefreedictionary.com) (last visited March 17, 2021).  Fatigue is defined as "1. Physical or mental weariness resulting from effort or activity. 2. Physiology The decreased capacity or complete inability of an organism, organ, or part to function normally because of excessive stimulation or prolonged exertion.  3. The weakening or failure of a material, such as metal or wood, resulting from prolonged stress."  Id., available online at: Fatigue | definition of fatigue by Medical dictionary (thefreedictionary.com) (last visited March 17, 2021).

The evidence cited by Plaintiff does not reveal malaise or extreme fatigue "so severe that it is likely [Plaintiff] would be found disabled regardless of [her] vocational background," as required to meet or medically equal a Listing.  Yuckert, 482 U.S. at 153. And, the Listings "should not be read expansively."  Caviness, 4 F. Supp. 2d at 818. Therefore, the evidence cited by Plaintiff does not compel a finding contrary to the ALJ's finding regarding Listing 14.09 (B or D).

Plaintiff's argument in her Social Security Brief that the case should be remanded because SSR 19-4p should apply to her headaches and the ALJ failed to take her headaches into account also fails. (Pl. Br. 20-21). First, The ALJ did take Plaintiff's headaches into account. (R. 17). She noted that Plaintiff "primarily treated her physical impairments with physical therapy, neurontin and cymbalta for pain, topamax and botox for her headaches, and intermittent primary care provider visits." (R. 17) (citations omitted). She found Plaintiff "reported okay pain control with her medications. Topamax and botox both reduced the frequency of her headaches or caused her to report good improvement." Id. (citing R. 576, 637). The evidence the ALJ cited supports her findings and confirms that she took Plaintiff's headaches into account. Moreover, as Plaintiff acknowledges, SSR 19-4p was not effective until August 26, 2019, seven months after the ALJ issued her decision. (Pl. Br. 21); see also, SSR 19-4p, 2019 WL 4169635, *1, *8 (SSA August 26, 2019). Further, the SSR explains that the SSA "will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." SSR 19-4p, 2019 WL 4169635, *8, n.27 (SSA August 26, 2019) (emphases added).

Plaintiff argues in her Reply Brief for the first time that SSR 19-4p "applies to 'claims that are pending on and after the applicable date,'" August 26, 2019, that the Appeals Council must "use this SSR in 'any case in which we make a determination or decision,'" and that "if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine

whether the new policy affects its prior decision." (Reply 8-9) (citing <u>Frantz</u>, 509 F.3d at 1302 (quoting <u>Sloan</u>, 499 F.3d at 889)). The court finds several problems with Plaintiff's arguments in her Reply Brief. The Commissioner has had no opportunity to address this argument or the cases cited.

First, this argument was not made in Plaintiff's initial brief. There, she argued only that SSR 19-4p "should" apply to her case without explanation why, or how, and without citation to the cases which she now argues support her argument, leaving the Commissioner to guess at the bases for her argument and giving no reply opportunity. The argument is too late now because an appellant must present her grounds for reversal in her opening brief. Fed. R. App. P. 28(a)(8)(A). This issue was raised in Plaintiff's Reply Brief. Thus, she has waived the issue. <u>See, e.g.</u>, <u>M.D. Mark, Inc. v. Kerr-McGee Corp.</u>, 565 F.3d 753, 768 n.7 (10th Cir.2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.").

Second, Plaintiff ignores that the SSR specifies that it will only be used in determinations or decisions by the SSA, and the Appeals Council denied review of the ALJ's decision leaving that decision as the final decision of the Commissioner. The Commissioner's final decision was complete and not pending after SSR 19-4p was promulgated and the Appeals Council did not make a decision or determination. The ALJ's decision was made on January 24, 2019 (R. 20) and, as the Commissioner noted, in judicial review a court applies the rules in effect at the time the decision was made. This principle is confirmed by considering the law of retroactivity.

> Retroactivity is not favored in the law.  Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.  By the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms.  Even where some substantial justification for retroactive rulemaking is presented, courts should be reluctant to find such authority absent an express statutory grant.

Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208-09 (1988) (citations omitted).

The court need not decide in this case whether Congress has provided the SSA the power to promulgate retroactive rules because the SSR here specifically disclaims retroactivity. Therefore, the court may not apply SSR 19-4p retroactively in its review of this case.

Finally, were the court to apply SSR 19-4p it would find Plaintiff has not shown that her headaches medically equal the severity of Listing 11.02(B or D) (dyscognitive seizures) as required by SSR 19-4p.  2019 WL 4169635 at *7.  The SSR explains, "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing."  Id.  As the SSR acknowledges it would be uncommon for a primary headache disorder (and the court assumes Plaintiff has such a disorder) to be medically equivalent in severity to a dyscognitive seizure. This is likely so because the regulations note,

> Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 11.00(H)(1)(b).  As this explanation makes clear, dyscognitive seizures are characterized by alteration of consciousness.  Thus, when they occur at least once a week for at least three consecutive months they are clearly disabling (Listing 11.02(B)) and when they only occur at least once every two weeks for at least three consecutive months, they require a marked limitation in physical or mental functioning (Listing 11.02(D)) to be presumed disabling.  Here, Plaintiff has not shown that her headaches are equivalent in severity to an alteration of consciousness.

## III.    Duty to Develop the Record

Plaintiff argues the ALJ failed "to develop the record sufficiently to make a determination."  (Pl. Br. 21).  She asserts the ALJ failed "to resolve the insufficiency of evidence in the record to determine whether Plaintiff's fibromyalgia met the requirements for disability under SSR 12-2p."  Id.  She argues the ALJ found Plaintiff's memory "deficits were not noticed without more exhaustive testing," that "Plaintiff was unable to remember significant portions of the information requested," and "that doctors were unable to conclusively complete testing."  Id. at 21.  However, Plaintiff's arguments misunderstand the decision and the record and do not demonstrate the record is insufficient to make a decision.

As to Plaintiff's memory deficits, the ALJ noted that "in examinations, [Plaintiff] displayed adequate memory," but that "[f]unctional testing did indicate some memory deficits."  (R. 15).  Consequently, she concluded that Plaintiff's memory deficits had not been "noticed without [the] more exhaustive testing" that she had received during the neuropsychological assessment—which showed memory deficits but also showed poor

effort, thereby rendering the results of the testing invalid.  (R. 605); <u>see also</u>, (R. 18) ("she gave very poor effort, compromising the results of psychological testing"). Plaintiff's argument "that doctors were unable to conclusively complete testing" cites to a facsimile cover letter from her attorney providing another copy of the report of neuropsychological assessment performed by Dr. Deutch which the ALJ relied upon above.  <u>Compare</u> (R. 560-65) <u>with</u> (R. 603-08).  Plaintiff has not demonstrated that any additional testing would produce valid results, that she would expend greater effort in additional testing, or that she should be excused for providing poor effort in the record testing.

Plaintiff is correct that in the ALJ hearing Plaintiff frequently professed to be unable to remember facts when asked questions by the ALJ or by her attorney.  However, that fact does mean the record was insufficient to reach a decision.  It merely means the ALJ was required to rely more fully on the other record evidence to reach a decision. Plaintiff has not shown that the remaining record evidence is insufficient.  Moreover, Plaintiff has not shown how further testing or consultation would fill in any gaps regarding Plaintiff's memory or past history.

Plaintiff has shown no failure in the ALJ's duty to develop the record.

## IV.    Light Work

Plaintiff argues that the ALJ assessed an RFC for sedentary work, but she erroneously characterized it as light work.  (Pl. Br. 9).  She points out that Dr. McCall found Plaintiff limited to sedentary work (R. 104) but the ALJ accorded that opinion little weight, and later stated, "it is clear that the claimant should is still [sic] capable of at least

sedentary work, giving her the benefit of the doubt." (R. 17). Plaintiff argues, "The ALJ has clearly failed to articulate how she came to the decision that Plaintiff had the capacity to perform light work as opposed to sedentary work," and "clearly applied the incorrect standard in this case. As such the case should be reversed and remanded for further findings." (Pl. Br. 10).

Plaintiff points to record evidence suggesting she was wobbly and unstable on her feet, can walk only for short distances, uses a cane, has right median neuropathy, reports limitations in her hands, and drops things and cannot feel her hands. Id. at 11-12. She argues, "Plaintiff is not suggesting that this Court [sic] should reweigh evidence, nor is Plaintiff arguing for a different interpretation of the evidence before the ALJ. This Court [sic] should find that the ALJ's findings are inconsistent with the evidence of the record as a whole and determine that the case should be remanded or reversed." (Pl. Br. 12). Plaintiff then continues her argument, explaining how the record evidence could (should?) be interpreted differently than did the ALJ. Id. at 12-14.

The Commissioner argues the ALJ found Plaintiff capable of light work and tempered those requirements in Plaintiff's favor. (Comm'r Br. 5-6) He argues that although the differences between light and sedentary work are small and although many of Plaintiff's capabilities limited her to sedentary exertion, "it was reasonable for the ALJ to define Plaintiff's exertional capacity as 'light work.'" Id. at 7. He argues that in any case Plaintiff "has not shown how she was prejudiced by this purported 'error,'" and "the vocational expert only identified sedentary jobs" of which an individual with the RFC the ALJ assessed is capable. Id. at 7, 8. He argues that even if an individual cannot

21

frequently climb stairs or ramps because she is required to use a cane, Plaintiff is not prejudiced because the ALJ found she could stand and or walk only two hours of a work day, less than the one-third of a day required for occasional use of a cane and far less than the two-thirds of a day required for frequent use. Id. at 9 & n.5.

A. **Analysis**

The court recognizes that certain of the RFC limitations assessed for Plaintiff may be consistent with light work, but it also recognizes that only "a wide or full range of light work … provides sufficient occupational mobility for … individuals who are not of advanced age" (such as a younger individual age 18-49, like the plaintiff in this case). 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(b). The RFC assessed here, however, is clearly not for "a wide or full range of light work," and Plaintiff was a younger individual age 18-49 during the period relevant in this case. Therefore, and as the VE stated, "An individual with this [RFC] profile would be restricted to sedentary, unskilled occupations." (R. 81). Moreover, as the Commissioner pointed out, all of the representative jobs cited by the VE and relied upon by the ALJ to find Plaintiff "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" are sedentary jobs and Plaintiff has not been prejudiced by the ALJ's characterization of her RFC as an RFC for light work. (R. 19-20).

The evidence cited by Plaintiff to suggest that her RFC should be more limiting than even sedentary work was all considered by the ALJ, and in many instances noted by the ALJ in her discussion. Despite Plaintiff's assertion that she is not suggesting the court reweigh the evidence and is not arguing a different interpretation of the evidence,

her statement that the court should find the ALJ's findings "inconsistent with the evidence of the record as a whole and determine that the case should be remanded or reversed," seeks precisely that.  The ALJ's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and as such the court may not substitute its judgment for that of the Commissioner.  Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.  Plaintiff's explanation how the record evidence could, or should, be interpreted differently than did the ALJ is simply an acknowledgement that the record might be interpreted two different ways.  Since one of those ways is the interpretation of the ALJ and that interpretation is supported by the record evidence, the court may not substitute a contrary view.  Lax, 489 F.3d at 1084.

The court's discussion above reveals there is no conflict between the specific RFC limitations assessed, the VE testimony, the DOT, and the representative jobs relied upon by the ALJ in finding Plaintiff capable of performing a significant number of jobs available in the economy.  Thus, the ALJ did not err by failing to resolve such nonexistent conflicts.

Having found no reversible error in the ALJ's decision, there is no basis for remanding this case, and certainly no basis for remanding for an immediate award of benefits as requested by Plaintiff.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 18, 2021, at Kansas City, Kansas.


s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**